IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


LA-QUN RASHEED WILLIAMS,           :
                                    :
            Plaintiff               :
                                    :
      v.                            :     CIVIL NO. 3:CV-12-529
                                    :
DAVID A VARANO, ET AL.,            :     (Judge Conaboy)
                                    :
            Defendants              :

_____

**MEMORANDUM**
**Background**

La-qun Rasheed Williams (Plaintiff), an inmate presently confined at the Smithfield State Correctional Institution, Huntingdon, Pennsylvania (SCI-Smithfield) initiated this pro se civil rights action. Service of the Complaint was previously ordered.

Named as Defendants are Plaintiff's prior place of confinement, the State Correctional Institution, Coal Township, Pennsylvania (SC-Coal Twp.) and the following prison officials: Superintendent David Varano; Deputy Superintendent Ronda Ellett; Majors George Miller, Michael Miller; Captain Charles Stetler; Unit Manager Tripp; Lieutenants J.B. Burns and Symons; Sergeants Green, Claudfelter, and Batiuk; Hearing Examiner Kerns-Barr;; Correctional Officers A.A., Kitchen, Klembara, Kepner, Wiseman, Allen, and Emrich, Tammy Behney, and three (3) John Does.

Also named as Defendants are Grievance Coordinators Kandis Dascandi, Dorina Varner, and Trisha Kelley; Attorney Debra Rand;

1

and Mail Inspector Therese Jellen of the Pennsylvania Department of Corrections (DOC).

Plaintiff states that on June 5, 2011 while housed in the SCI-Coal Twp. Restricted Housing Unit (RHU), Defendants Emerich and Kitchen retaliated against him over his prior filing of a federal lawsuit and institutional grievances by serving him a meal tray which contained a dead mouse. See Doc. 1, ¶ 27. He adds that multiple Defendants failed to take appropriate action in response to a grievance which he filed regarding that incident.

Plaintiff also indicates that he was issued falsified misconduct on August 10, 2011 which apparently alleged that he had fabricated his claim of being served a dead mouse. Williams further claims that he was denied due process during the ensuing disciplinary proceedings

It is next alleged that Plaintiff was subjected to more retaliation on August 13, 2011 when he was transferred to a disciplinary custody cell "so that his television, radio, and phone calls could be taken." Doc. 1, ¶ 40. Additional retaliation allegedly occurred on September 18, 2011 when Williams was served a food tray by Defendants Wiseman and Enrich which had a dirty wash cloth in his food. See id. at ¶ 52.

Thereafter, it is asserted that Sergeant Greene deliberately placed an inmate with a history of assaultive behavior[1] in a

---

1. The prisoner, Carmen Besciglia, is described as being HIV positive and afflicted with Hepatitis C who is known for throwing vomit, urine, and excrement on inmates. It is also alleged that Besciglia had previously attacked Plaintiff.

recreation cage near the Plaintiff so that the prisoner could throw human waste at Williams and other inmates.  See id. at ¶ 63.  On November 4, 2011, Defendants including Kepner, allegedly tried to again place Plaintiff in harm's way by similarly ordering him into a recreation cage next to Inmate Besciglia.  When Williams tried to refuse, he was threatened with the issuance of a misconduct charge for failing to obey an order.  When Plaintiff reluctantly agreed to enter the recreation cage he was attacked for a third time by Inmate Besciglia.  After Williams filed a grievance, Defendant Kepner purportedly responded with a fabricated disciplinary charge. The Complaint again asserts that Plaintiff's due process rights were violated during the ensuing misconduct proceedings.

Plaintiff further contends that CO Kitchen confiscated and intentionally destroyed his personal legal materials.  Williams asserts that his subsequent grievance regarding the taking of his legal materials was improperly denied.  In addition, there was interference and destruction with his outgoing legal mail.  Freeman further alleges that the retaliatory conduct attributed to the Defendants was the result of a conspiracy to deter him from pursuing his legal remedies.  Plaintiff seeks compensatory and punitive damages as well as injunctive and declaratory relief.

Presently pending is Defendants' motion to dismiss the Complaint for failure to state claim (Doc. 12) and Plaintiff's

second motion to amend his Complaint (Doc. 28).[2]  Both motions are ripe for consideration.

### Discussion

#### Motion to Amend

Plaintiff has filed a second motion to amend his Complaint. See Doc. 28.  He asserts that the sole purpose of his motion is to provide the identity of Defendant John Doe 1 as being Corrections Officer Yoder.

Williams' motion will be granted and CO Yoder will be substituted for Defendant John Doe 1.

#### SCI-Coal Twp.

Courts have repeatedly recognized that a prison or correctional facility is not a person for purposes of civil rights liability.  See Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973); Philogene v. Adams County Prison, Civ. No. 97-0043, slip op. at p. 4 (M.D. Pa. Jan. 30, 1997) (Rambo, C.J.); Sponsler v. Berks County Prison, Civ. A. 95-1136, 1995 WL 92370, at *1 (E.D. Pa. Feb. 28, 1995).  Pursuant to the above standards, SCI-Coal Twp. is clearly not  a person and therefore not subject to civil rights liability.  See Thompkins v. Doe, No. 99-3941, slip op. at 3 (3d Cir. March 16, 2000).  Consequently, this Court will sua sponte enter dismissal in favor of Defendant SCI-Coal Twp.

---

2.  By Order dated February 5, 2013 Plaintiff's unopposed motion for leave to submit amendments to his Complaint was granted and his accompanying supplemental allegations (Doc. 15, ¶¶ 167- 212) were accepted.
    Since the pending motion to dismiss had already been filed it does not address those amendments.

**Motion to Dismiss**

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). A plaintiff must present facts that, if true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action. Id. at 556. A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, ___ U.S. ____ , 129 S.Ct 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Iqbal, 129 S.Ct at 1949. Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief. See id. at 1950.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, at 555. The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action). Additionally, pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

**Eleventh Amendment**

Defendants initially contend that the claims against them in their official capacities must be dismissed. See Doc. 13, p. 6.

The Eleventh Amendment bars all suits against a state and its agencies in federal court that seek monetary damages. Walker v. Beard, 244 Fed. Appx. 439, 440 (3d Cir. 2007); see also A.W. v. Jersey City Public Schools, 341 F.3d 234, 238 (3d Cir. 2003). Likewise, suits brought against state officials acting in their official capacities are to be treated as suits against the employing government agency. Will v. Michigan Department of State Police, 491 U.S. 58, 70-71 (1989); Garden State Elec. Inspection Serv. v. Levin, 144 Fed. Appx. 247, 251 (3d Cir. 2005). As such, Williams' damage claims brought against Defendants in their

official capacities are considered to be against the state itself and are barred by the Eleventh Amendment.[3]

**Personal Involvement**

The second argument for dismissal asserts that claims against various Defendants should be dismissed for failure to allege personal involvement. See Doc. 13, p. 6.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Cotitution or laws of the United States. See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

With respect to Defendant DOC Attorney Debra Rand, the motion to dismiss asserts that the body of the Complaint does not mention Rand by name and that a DOC attorney such as Rand is entitled to absolute immunity. See id. at p. 7, n. 1.

It has been recognized that DOC counsel"is not a state actor for purposes of imposing liability under § 1983. Swinson v. Department of Corredctions, 2009 WL 33330 *16 (W.D. Pa. Jan. 5, 2009); Elliott v. Dorian, 2007 WL 120031 (W.D. Pa. Jan. 10, 2007)(DOC attorney is entitled to absolute immunity from suit under

---

3. Plaintiff's claims for injunctive and declaratory relief against Defendants in their official capacities, however, are not barred by the Eleventh Amendment. See Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002).

§ 1983 with respect to his defense of DOC personnel in a lawsuit); <u>Briscoe v. LaHue</u>, 460 U.S. 325, 330 n. 6 (1983).

The Complaint lists Attorney Rand as being a Defendant describing her as being the attorney for DOC defendants. <u>See</u> Doc. 1, ¶ 22. There is no other mention of Defendant Rand in the Complaint.[4] Accordingly, since there are no factual assertions that Rand was personally involved in any constitutional misconduct and it appears that Plaintiff is attempting to establish liability against said Defendant solely on the basis that she has represented DOC officials in lawsuits, under the standards announced in <u>Swinson</u>, <u>Elliott</u>, and <u>Briscoe</u>, Attorney Rand is entitled to entry of dismissal.

It is next argued that Defendants Klembara, Jellen, Tripp, Symons, Kelley and Behney "are not mentioned as actors in the factual section" of the Complaint (¶¶ 25-137). Doc. 13, p. 8. Consequently, since are no facts alleging personal involvement by those officials in any constitutional violations, the motion to dismiss contends that they are entitled to entry of dismissal.

Federal civil rights claims brought under § 1983 cannot be premised on a theory of <u>respondeat</u> <u>superior</u>. <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. <u>See</u> <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>Hampton</u>

---

4. There is also no mention of Defendant Rand in Plaintiff's supplemental allegations.

<u>v. Holmesburg Prison Officials</u>, 546 F.2d 1077 (3d Cir. 1976).  As
explained in <u>Rode</u>:

> A defendant in a civil rights action must have
> personal involvement in the alleged wrongs. . .
> . [P]ersonal involvement can be shown through
> allegations of personal direction or of actual
> knowledge and acquiescence.  Allegations of
> participation or actual knowledge and
> acquiescence, however, must be made with
> appropriate particularity.

<u>Rode</u>, 845 F.2d at 1207.

The Complaint briefly describes: Tripp as being a Unit
Manager, Symons as being a Lieutenant; Batuiuk a Sergeant; Klembara
and Behney as COs; Kelley as being a DOC Grievance Coordinator; and
Jellen, a Mail Inspector.  The Complaint admittedly sets forth many
factually specific claims against numerous Defendants. Based upon a
careful review of the Complaint, there are simply no facts
presented alleging how any of the six (6) above listed Defendants
violated Williams' constitutional rights.

Rather, the Legal Claims section of the Complaint simply
lists Symons as being among a group of Defendants who purportedly
failed to intervene on Plaintiff;'s behalf.  <u>See</u> Doc. 1, ¶ 141.
Symons is also listed as being involved in the destruction of
Plaintiff's legal materials (¶144); the issuance of fabricated
misconduct charges and food tampering (¶ 145); and hard cell
placement (¶ 150).

It is generally asserted that Batiuk, Tripp, and Klembara
were part of a retaliatory conspiracy to sabotage his law suits and
grievances.  <u>See</u> <u>id</u>. at ¶ 142, 155, 157.  Klembara also purportedly

participated in the food tampering (¶ 157).  With respect to
Kelley, it is vaguely contended only that she was among a number of
Defendants who maintained false records and failed to investigate
Plaintiff's claims.  See id. at ¶ 143.  In regards to Behney, the
Legal Claim section indicates that he was among a group of
defendants who destroyed Plaintiff's legal materials (¶ 144) and
interfered with his outgoing mail (¶ 148).  Finally, in regards to
Jellen it is generally alleged that he was among the Defendants who
interfered with his outgoing mail (¶ 148).

The Facts section of the Complaint (¶¶ 25-137) sets forth
specific facts concerning the alleged retaliation, conspiracy,
failure to protect, sabotage of his lawsuits and grievances,
destruction of legal property, and mail interference claims.
However, there is no mention whatsoever of Defendants Klembara,
Jellen, Tripp, Symons, Kelley and Behney throughout that lengthy
portion of the Complaint.

The mere vague conclusory listing of a defendant as having
been engaged in an act of constitutional misconduct is insufficient
when accompanying factually specific allegations regarding that
claim contain no mention of said defendant.  Although there is not
a heightened pleading standard in civil rights cases and liberal
standards are to be applied to pro se pleadings, a § 1983 complaint
in order to comply with the Federal Rules of Civil Procedure,[5] must

_____

5.  Federal Rule of Civil Procedure 8 requires that a complaint
contain a short and plain statement setting forth (1) the grounds
upon which the court's jurisdiction rests, (2) the claim showing
that the pleader is entitled to relief, and (3) a demand for
(continued...)

contain at least a modicum of factual specificity, identifying the particular conduct of each defendant that is alleged to have harmed the plaintiff, so that a defendant has adequate notice to frame an answer.[6]  A civil rights complaint complies with this requirement if it alleges the conduct violating plaintiff's rights, the time and the place of that conduct, and the identity of the responsible officials.

Williams' Complaint provides no adequate description as to how Defendants Klembara, Jellen, Tripp, Symons, Kelley and Behney allegedly violated his constitutional rights.  The time, place and nature of the alleged unconstitutional conduct regarding those six (6) Defendants is not set forth in the Complaint.  Rather, Plaintiff only sets forth vague averments which fail to sufficiently set forth a constitutional claim in concise and understandable terms.  Under even the most liberal construction, the Complaint with respect to those six (6) Defendants does not give fair notice of what Plaintiff's claims are and the grounds upon which they rest.

Accordingly, Defendants Klembara, Jellen, Tripp, Symons, Kelley and Behney's request for dismissal on the basis of failure

─────────────────────

5.  (...continued)
judgment for the relief sought by the pleader.

6.  The United States Supreme Court in <u>Leatherman v. Tarrant County Narcotics Unit</u>, 507 U.S. 163, 167 (1993), held that it was improper to apply heightened pleading standards to § 1983 actions. The Court noted that a § 1983 complaint need only to comply "with the liberal system of 'notice pleading' set up by the Federal Rules." <u>Id</u>.

to allege personal involvement will be granted with respect to the Complaint. However, the supplemental claims (Doc. 15, ¶¶ 167-212) asserted against those six (6) Defendants, which were submitted after the filing of the motion to dismiss, will be allowed to proceed.

The motion to dismiss next asserts that Defendants Varano, Dascani, Varner and Kerns-Barr are entitled to dismissal because Plaintiff is attempting to establish liability against them based upon their handling of his grievances and administrative appeals or their role in the misconduct process. <u>See</u> Doc. 13, p. 9.

Inmates do not have a constitutional right to a prison grievance system. <u>See</u> <u>Jones v. North Carolina Prisoners Labor Union</u>, 433 U.S. 119, 137-138 (1977); <u>Speight v. Sims</u>, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, any attempt by Plaintiff to establish liability against Superintendent Varano; Grievance Coordinators Dascani, Varner and Kelley; as well as Hearing Examiner Kerns-Barr solely based upon the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim. <u>See also</u> <u>Alexander v. Gennarini</u>, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); <u>Pryor-El v. Kelly</u>, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional

rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

With respect to Grievance Coordinators Dascandi and Varner, and also Grievance Coordinator Kelley, a review of the Complaint and supplemental allegations confirms that at most Plaintiff is asserting liability against Dascandi Kelley, and Varner solely premised on their handling of Plaintiff's grievance appeals. Accordingly, under an application of the Alexander and Pryor-El rulings, dismissal will be entered in their favor.

However, since there are claims alleged against Superintendent Varano and Hearing Examiner Kerns-Barr which are not solely premised on their handling of Plaintiff's grievances, complaints, and appeals those two individuals will remain as Defendants in this case solely with respect to those additional allegations.

**Retaliation**

Defendants correctly note that the Complaint alleges that Williams was subjected to food tampering, fabricated misconducts, and placed near an assaultive prisoner known to throw bodily fluids. All of those actions were allegedly taken in retaliation for Plaintiff's initiation of grievances and lawsuits. See Doc. 13, p. 12. However, the Defendants contend that the claims of retaliation are insufficient because a causal connection between a constitutionally protected activity and the purported adverse actions has not been satisfied. See id.

13

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." (Id.)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." (Id.)(quoting Suppon v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." Rauser, 241 F.3d at 333-34(quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.[7] See Lape v. Pennsylvania, 157 Fed. App'x. 491, 498 (3d Cir. 2005).

Once Plaintiff has made a prima facie case, the burden shifts to Defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest."

---

7.   Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation. Krouse v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

Carter v. McGrady, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted). When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. Rauser, 241 F.3d at 334.

As noted in Allah, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied. Thus, the relevant inquiry is not whether the alleged retaliatory conduct was unconstitutional. On the contrary, Plaintiff only needs to establish that he was subjected to adverse action in retaliation for his engagement in constitutionally protected conduct.

Plaintiff asserts that the alleged retaliatory conduct was undertaken for his pursuit of legal action, including a prior federal civil rights action. The filing of a lawsuit is protected activity under the First Amendment right of prisoners to petition the court. Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997); Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981). Thus, the first prong of Rauser, i.e., that the plaintiff be engaged in a constitutionally protected activity, has been satisfied.

With respect to the second prong of Rauser, this Court is equally satisfied that the alleged issuance of fabricated misconduct charges, mail interference, being served tampered food and deliberately being placed at risk of assault by another

inmate,[8] the adverse actions allegedly taken against Williams, would be sufficient to deter a prisoner of ordinary firmness from exercising his constitutionally protected conduct.  Hence, there has also been adequate compliance with that <u>Rauser</u> requirement.

As previously noted, Plaintiff must be afforded liberal treatment as a <u>pro se</u> litigant.  Furthermore, Defendants acknowledge that Plaintiff has set forth factual assertions in his Complaint which support his claims of a retaliatory motive behind the purported food tampering, fabricated misconducts, and placement near an assaultive prisoner.  Based upon those considerations, the factual assertions set forth in the Complaint, support a reasonable inference that the adverse actions were intended as retaliation for the Plaintiff's exercise of protected conduct.  Thus, at this juncture of the proceedings, Plaintiff has adequately satisfied the third prong of <u>Rauser</u>. The request for dismissal of the retaliation claims, including the allegations of food tampering, mail interference,[9] destruction of personal legal property, fabricated

---

8.  The filing of a false disciplinary charge is not a constitutional violation unless the charge was filed in retaliation for the exercise of a constitutional right.  <u>See</u> <u>Flanagan v. Shively</u>, 783 F.Supp. 922, 931 (M.D. Pa.1992), <u>aff'd</u>., 980 F.2d 722 (3d Cir.1992).  For example, the Third Circuit Court of Appeals has ruled that an allegation of falsifying misconduct reports in retaliation for an inmate's "resort to legal process" is a violation of the7 First Amendment guarantee of access to the courts.  <u>Smith</u>, 293 F.3d 653 (citation omitted).

9.  Interference with inmate non-legal mail may amount to a denial of free speech under the First and Fourteenth Amendments. <u>See</u> <u>Procunier v. Martinez</u>, 416 U.S. 396, 412 (1974), <u>Hamm v. Rendell</u>, 166 Fed. Appx. 599, 603 (3d Cir. 2006).

misconduct charges, and placement of Williams in situations so that
he could be attacked by an inmate with a history of assaultive
behavior will be denied.

### Due Process

Defendants next argue that Plaintiff's claims of being
denied due process during institutional misconduct proceedings are
barred by Heck v. Humphrey, 512 U.S. 477 (1994).  Doc. 13, p. 14.

In Heck the Supreme Court ruled that a constitutional cause
of action for damages does not accrue "for allegedly
unconstitutional conviction or imprisonment, or for other harm
caused by actions whose unlawfulness would render a conviction or
sentence invalid," until the Plaintiff proves that the "conviction
or sentence has been reversed on direct appeal, expunged by
executive order, declared invalid by a state tribunal authorized to
make such determination, or called into question by a federal
court's issuance of a writ of habeas corpus."  Id. at 486-87.  The
Heck rationale was extended to a state prison disciplinary
proceeding in Edwards v. Balisok, 520 U.S. 641, 646 (1997).

Inmates challenging the duration of their confinement or
seeking earlier or speedier release must assert such claims in a
properly filed habeas corpus action.  Preiser v. Rodriquez, 411
U.S. 475 (1975), Telford v. Hepting, 980 F.2d 745, 748 (3d Cir.),
cert. denied 510 U.S. 920 (1993). Habeas corpus review allows a
prisoner to challenge the 'execution' of his sentence.  Woodall v.
Federal Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005).
Review is available "where the deprivation of rights is such that

it necessarily impacts the fact or length of detention." Leamer v. Fauver, 288 F.3d 532, 540 (3d Cir. 2002).

The United States Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 563-73 (1974), held that a prisoner deprived of good time credits as a sanction for misconduct is entitled to certain due process protections in a prison disciplinary proceeding. Wolff noted that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556. Nonetheless, the Supreme Court held that a prisoner facing a loss of good time credits is entitled to some procedural protection. Id. at 563-71.

A subsequent Supreme Court decision, Sandin v. Conner, 515 U.S. 472, 480-84 (1995), reiterated that the due process safeguards set forth in Wolff must be provided when the challenged disciplinary proceeding results in a loss of good time credits. See also Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991) (a federal prisoner has a constitutionally protected liberty interest in good time credit); Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992).

Under the Preiser and Telford standards, Williams must initially seek federal habeas corpus review with respect to any institutional disciplinary proceeding which resulted in a loss of good time credit or otherwise extended the length of his federal incarceration. It is unclear from the Complaint, supplemental claims, and motion to dismiss as to whether any of the challenged disciplinary proceedings resulted in a loss of good time credit.

18

In the event that the misconduct proceedings which are presently being challenged by Williams **did** result in a loss of good time credits, Plaintiff's pending claims, if proven, would affect the duration of his confinement. Therefore to the extent that Plaintiff seeks injunctive relief, i.e, the overturning of the findings of guilt, he must raise such claims via a properly filed habeas corpus petition. Under the standards announced in <u>Heck</u>, if Williams is able to successfully challenge the outcome of his disciplinary proceedings in his habeas action, he may then seek monetary damages via a properly filed civil rights action.

Assuming that Williams' disciplinary proceedings **did not** result in a loss of good conduct time or otherwise extend the duration of his confinement, under <u>Sandin</u>,[10] his procedural due process claims likewise cannot proceed. <u>See</u> <u>Torres v. Fauver</u>, 292 F.3d 141, 150-51 (3d Cir. 2002)(because prisoners can reasonably anticipate transfer to disciplinary custody, placement in segregation as a disciplinary sanction did not implicate a protected liberty interest); <u>Griffin v. Vaughn</u>, 112 F.3d 703, 706-08 (3d Cir. 1997)(no liberty interest in avoiding fifteen (15) month placement in administrative custody because said confinement was not atypical); <u>Smith v. Mensinger</u>, 293 F.3d 641, 645, 654 (3d

---

10. In <u>Sandin</u>, the Supreme Court reasoned, <u>inter</u> <u>alia</u>, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence. <u>Id</u>. at 485.

Cir. 2002)(seven (7) months of disciplinary confinement did not implicate liberty interest).

In conclusion, any claims that denials of due process during misconduct proceedings which resulted in a loss of good conduct time are dismissed without prejudice to Williams' right to initially challenge such proceedings in a federal habeas corpus action.

Second, Williams' procedural due process claims relating to disciplinary proceedings which **did not** result in a loss of good conduct time or otherwise extend the duration of his confinement, likewise cannot proceed. However, any claims that denials of due process during misconduct proceedings which did not result in a loss of good conduct time were undertaken in retaliation will be allowed to proceed.

**Access to the Court**

Defendants's final argument asserts that to the extent that the Complaint attempts "to craft an access to the courts claim" said attempt must fail because Plaintiff has failed to show that he suffered any actual injury. Doc. 13, p. 14.

Inmates have a constitutional right to meaningful access to law libraries, legal materials or legal services. <u>Bounds v. Smith</u>, 430 U.S. 817, 821-25 (1977). The United States Supreme Court in <u>Lewis v. Casey</u>, 518 U.S. 343, 351-54 (1996), clarified that an inmate plaintiff, in order to set forth a viable claim under <u>Bounds</u>, must demonstrate that a non-frivolous legal claim had been

frustrated or was being impeded. A plaintiff must also allege an actual injury to his litigation efforts.

The Complaint contends that there was interference with his legal mail and unjustified denial of access, confiscation, and even destruction of his personal legal property. See Doc. 1 ¶¶ 104-137.

Plaintiff indicates that as a result of the alleged misconduct he was unable to timely initiate a planned action dealing with newly discovered evidence pursuant to Pennsylvania's Post Conviction Relief Act (PCRA). See id., ¶¶ 112-113. It is also alleged that Williams could not pursue claims against parties with respect to a pending civil action. See id. at ¶ 124.

In light of the liberal standards applied to pro se filings and Defendants' failure to adequately address the issue of whether the harm alleged by Plaintiff was non-frivolous as required under Lewis, this Court will deny the request for dismissal at this stage in the proceedings.

**Conspiracy**

It is also noted that the pending motion to dismiss does not address the claim of conspiracy. "To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir. 1989). The essence of a conspiracy is an agreement or concerted action between individuals. See D.R. by L.R. v. Middle

21

<u>Bucks Area Vocational Technical Sch.</u>, 972 F.2d 1364, 1377 (3d Cir. 1992); <u>Durre v. Dempsey</u>, 869 F.2d 543, 545 (10th Cir. 1989).

Since the sufficiency of the conspiracy claim has not been addressed by Defendants, it will also proceed.

**Conclusion**

Plaintiff's second motion to amend (Doc. 28) wil be granted and Corrections Officer Yoder is hereby substituted for Defendant John Doe 1.

Defendants' motion to dismiss (Doc. 11) the Complaint will be partially granted. Plaintiff's damage claims against Defendants in their official capacities are dismissed.  Second, dismissal will be entered in favor of Defendants  SCI-Coal Twp.; Attorney Debra Rand; Grievance Coordinators Kandis Dascandi, Trisha Kelley, and Dorina Varner

Defendants Klembara, Jellen, Tripp, Symons, and Behney's request for dismissal on the basis of failure to allege personal involvement will be granted with respect to the Original Complaint only.

Any claims that denials of due process during misconduct proceedings which **did** result in a loss of good conduct time are dismissed without prejudice to Williams' right to initially pursue such claims in a federal habeas corpus action.

Williams' procedural due process claims relating to disciplinary proceedings which **did not** result in a loss of good conduct time or otherwise extend the duration of his confinement are dismissed. However, any retaliation claims regarding denials of

due process during misconduct proceedings which did not result in a loss of good conduct time will be allowed to proceed.

The Defendants' request for dismissal of the retaliation claims including the allegations of food tampering, mail interference, fabricated misconduct charges, and placement of Williams in situations so that he could be attack by an inmate with a history of assaultive behavior will be denied. The cliams of denial of access to the court will also be denied. Since it has not been addressed by the motion to dismiss, Plaintiff's claims of conspiracy and the supplemental allegations (Doc. 15, ¶¶ 167-212) against the Remaining Defendants will also proceed. An appropriate order will enter.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: MARCH 8, 2013

IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


LA-QUN RASHEED WILLIAMS,          :
                                  :
          Plaintiff              :
                                  :
     v.                          :     CIVIL NO. 3:CV-12-529
                                  :
DAVID A VARANO, ET AL.,          :     (Judge Conaboy)
                                  :
          Defendants             :

_____

### ORDER

AND NOW THIS 8th DAY OF MARCH 2013, in accordance with the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

1.    Plaintiff's second motion to amend (Doc. 28) is **GRANTED.**

2.    Corrections Officer Yoder is substituted for Defendant John Doe 1.

3.    Defendants' motion to dismiss (Doc. 12) the Complaint is **GRANTED IN PART.**

4.    Plaintiff's damage claims against Defendants in their official capacities are **DISMISSED.**

5.    Dismissal is **GRANTED** in favor of Defendants SCI-Coal Twp., Attorney Debra Rand, Grievance Coordinators Kandis Dascandi, Trisha Kelley and Dorina Varner

24

6.        Defendants Klembara, Jellen, Tripp, Symons, Kelley and Behney's request for dismissal on the basis of failure to allege personal involvement will be **GRANTED** with respect to the Complaint.

7.        Any claims that denials of due process during misconduct proceedings which resulted in a loss of good conduct time are **DISMISSED WITHOUT PREJUDICE** to Williams' right to challenge such proceedings in a federal habeas corpus action.

8.        Williams' procedural due process claims relating to disciplinary proceedings which **did not** result in a loss of good conduct time or otherwise extend the duration of his confinement are **DISMISSED.** However, any retaliation claims regarding denials of due process during misconduct proceedings which did not result in a loss of good conduct time will be allowed to proceed.

9.        Defendants' request for dismissal of the retaliation claims including the allegations of food tampering, mail interference, fabricated misconduct charges, and placement of Williams in situations so that he could be

attack by an inmate with a history of assaultive behavior is **DENIED**.

10. The motion to dismiss is **DENIED** with respect to the claims of denial of access to the courts.

11. Since they have not been addressed by the motion to dismiss, Plaintiff's claims of conspiracy and his supplemental allegations against the Remaining Defendants will also proceed.


<u>S/Richard P. Conaboy</u>
RICHARD P. CONABOY
United States District Judge