IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


LA-QUN RASHEED WILLIAMS,           :
                                   :
          Plaintiff                :
                                   :
     v.                            :     CIVIL NO. 3:CV-12-529
                                   :
DAVID A VARANO, ET AL.,            :     (Judge Conaboy)
                                   :
          Defendants               :

_____

### MEMORANDUM

### Procedural History

        La-qun Rasheed Williams (Plaintiff), an inmate presently
confined at the Greene State Correctional Institution, Waynesburg,
Pennsylvania (SCI-Greene) initiated this pro se civil rights
action.  Plaintiff's unopposed motion for leave to submit
amendments to his Complaint was subsequently granted and his
proposed accompanying amendments (Doc. 15, ¶¶ 167- 212) were
accepted.

        By Memorandum and Order dated March 8, 2013, Plaintiff's
second motion to amend his Complaint was granted and Correctional
Officer Yoder was substituted for Defendant John Doe 1.  See Doc.
35.  In addition, the Memorandum and Order entered sua sponte
dismissal in favor of Defendant SCI-Coal Twp and granted in part
Defendants' motion seeking partial dismissal of the Complaint.  See
id.

1

Specifically, dismissal was granted with respect to Williams' damage claims brought against Defendants in their official capacities and in favor of Defendants Attorney Debra Rand, Grievance Coordinators Kandis Dascandi, Trisha Kelley, and Dorina Varner.[1]  Second, dismissal was entered in favor of Defendants Klembara, Jellen, Tripp, Symons, and Behney on the basis of failure to allege personal involvement solely with respect to the allegations raised in the Original Complaint.

In addition, Plaintiff's procedural due process claims relating to disciplinary proceedings which **did not** result in a loss of good conduct time or otherwise extend the duration of his confinement were dismissed.  However, any retaliation claims regarding denials of due process during misconduct proceedings which did not result in a loss of good conduct time were allowed to proceed.  Williams' allegations of denials of due process during misconduct proceedings which resulted in a loss of good conduct time were also dismissed, however, dismissal of those allegations was entered without prejudice to any right Plaintiff had to challenge those proceedings via a federal habeas corpus petition.

Finally, Defendants' request for dismissal of the retaliation claims including the allegations of food tampering, mail interference, fabricated misconduct charges, and placement of

---

1.  Since they were not addressed by the motion to dismiss, Plaintiff's claim of conspiracy as well as his supplemental allegations against the Defendants were allowed to proceed

Williams in situations so that he could be attack by an inmate with a history of assaultive behavior was denied.

**Plaintiff's Allegations**

Remaining Defendants are the following officials at Plaintiff's prior place of confinement, the State Correctional Institution, Coal Township, Pennsylvania (SCI-Coal Twp.): Superintendent David Varano; Deputy Superintendent Ronda Ellett; Majors George Miller, Michael Miller; Captain Charles Stetler; Unit Manager Tripp; Lieutenants J.B. Burns and Symons; Sergeants Green, Claudfelter, and Batiuk; Hearing Examiner Kerns-Barr; Correctional Officers A.A. Kitchen, Klembara, Kepner, Wiseman, Allen, Yoder, and Emrich; Tammy Behney, and two (2) John Does.  Also named as a Defendant is Mail Inspector Therese Jellen of the Pennsylvania Department of Corrections (DOC).

According to the Complaint, on June 5, 2011 while Plaintiff was assigned to the SCI-Coal Twp. Restricted Housing Unit (RHU), Defendants Emerich and Kitchen retaliated against him over his prior filing of a federal lawsuit and institutional grievances by serving him a meal tray which contained a dead mouse.  See Doc. 1, ¶ 27.  In a related claim, Williams indicates that he was issued a falsified misconduct on August 10, 2011 which alleged that he had fabricated his claim of being served a dead mouse.  Williams further claims that he was denied due process during the ensuing disciplinary proceedings.

Plaintiff's second retaliation claim contends that on August 13, 2011 he was transferred to a disciplinary custody cell "so that

3

his television, radio, and phone calls could be taken." Doc. 1, ¶ 40. Williams indicates that he was told in November 2011 that those items would be returned to him if he withdraw his pending federal law suit. <u>See</u> Doc. 15, ¶ 167. A third instance of retaliation occurred on September 18, 2011 when Williams was purportedly served a food tray by Defendants Wiseman and Enrich which had a dirty wash cloth in his food. <u>See id</u>. at ¶ 52.

It is next alleged that Sergeant Greene deliberately placed an inmate with a history of assaultive behavior[2] in a recreation cage near the Plaintiff so that the prisoner could throw human waste at Williams. <u>See id</u>. at ¶ 63. On November 4, 2011, Defendants including Kepner, put Plaintiff in harm's way by similarly ordering him into a recreation cage next to Inmate Besciglia. When Williams tried to refuse, he was threatened with the issuance of a misconduct charge. After Plaintiff reluctantly agreed to enter the recreation cage he was purportedly attacked for a third time by Inmate Besciglia. After Williams filed a grievance, Defendant Kepner purportedly responded by issuing him a fabricated disciplinary charge. The Complaint again asserts that Plaintiff's due process rights were violated during the ensuing misconduct proceedings.

The Complaint next maintains that CO Kitchen confiscated and intentionally destroyed Plaintiff's personal legal materials and

---

2. The prisoner, Carmen Besciglia, is described as being HIV positive and afflicted with Hepatitis C who is known for throwing vomit, urine, and excrement on inmates. It is also alleged that Besciglia had previously attacked Plaintiff.

that there was interference and destruction with his outgoing legal mail. Plaintiff also indicates he was subjected to verbal threats by Defendant Klembara, issuance of a retaliatory falsified disciplinary charge, and confiscation of personal property during February, 2012. <u>See</u> Doc. 15, ¶¶ 168-75. During that same time period, Defendant Behney allegedly discarded some of Williams' personal legal property and the Plaintiff was subjected to a retaliatory hard cell placement. While in the hard cell, Plaintiff allegedly received a food tray with a razor blade in his food. <u>See id</u>. at ¶ 183.

Presently pending is Defendants' motion for summary judgment. <u>See</u> Doc. 77. The opposed motion is ripe for consideration.

**Discussion**

Defendants seek entry of summary judgment for the following reasons no reasonable trier of fact could find that Plaintiff was related against with respect to; (1) the alleged placement of a dead mouse on Williams' meal tray; (2) placement of a wash cloth on his meal tray; and (3) the claim of being set up for an assault by another prisoner. It is also argued that viable claims of denial of access to the courts and conspiracy have not been stated and that Williams failed to exhaust his administrative remedies.

It is initially noted that once again the summary judgment motion does not address Plaintiff's supplemental allegations.[3] As

---

3. In addition Plaintiff's second retaliation claim which contends that he was transferred to a disciplinary custody cell on August

(continued...)

a result those claims shall proceed and the motion will be deemed as seeking partial summary judgment.

**Standard of Review**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in

---

3.   (...continued)
13, 2011 so that his television, radio, and phone calls could be taken is not addressed by the pending summary judgment motion.

its complaint.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial."  Celotex, 477 U.S. at 322-23.  "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'"  Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).  It is additionally noted that pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

**Access to the Court**

Plaintiff contends that there was interference with his legal mail and unjustified denial of access, confiscation, and even destruction of his personal legal property.  See Doc. 1 ¶¶ 104-137.  Williams indicated that as a result of the alleged misconduct he was unable to timely initiate a planned action dealing with newly discovered evidence pursuant to Pennsylvania's Post Conviction Relief Act (PCRA).  See id., ¶¶ 112-113.  The Complaint

7

further alleges that Plaintiff could not pursue claims with respect to a pending civil action.  See id. at ¶ 124.

Defendants' motion to dismiss argued in part that Williams did not allege a viable claim of denial of access to the court because he failed to show that he suffered any actual injury.  This Court's March 8, 2013 Memorandum and Order in addressing that argument stated that in "light of the liberal standards applied to pro se filings and Defendants' failure to adequately address the issue of whether the harm alleged by Plaintiff was non-frivolous" as required under Lewis v. Casey, 518 U.S. 343, 351-54 (1996), it would be inappropriate to grant the request for dismissal.  Doc. 35, p. 21.

As previously discussed by this Court, prisoners enjoy a constitutional right of meaningful access to the law libraries, legal materials, or legal services.  Bounds v. Smith, 430 U.S. 817, 821-25 (1977).  Inmates have a right to send and receive legal mail which is uncontroverted and implicates both First and Sixth Amendment concerns, through the right to petition the government and the right of access to the courts.  "When legal mail is read by prison employees, the risk is of a 'chill,' rendering the prisoner unwilling or unable to raise substantial legal issues critical of the prison or prison employees."  Proudfoot v. Williams, 803 F. Supp. 1048, 1052 (E.D. Pa. 1992).

The United States Supreme Court in Lewis, clarified that an inmate plaintiff, in order to set forth a viable claim under Bounds, must demonstrate that a non-frivolous legal claim had been

frustrated or was being impeded.  A plaintiff must also allege an actual injury to his litigation efforts.  Under the standards mandated by Lewis, in order for an inmate to state a claim for interference with his legal work, he must demonstrate that he has suffered actual injury.  See Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997)(concluding that Lewis effectively requires a showing of actual injury where interference with legal mail is alleged).

With respect to the pending denial of access to the courts claims, Remaining Defendants' pending motion for summary judgment generally asserts only that Plaintiff has failed "allege any such injury in any specific detail."  Doc. 78, p. 10.  Their vague, abbreviated argument fails to address the concerns outlined by this Court's March 8, 2013 Memorandum and Order.  Based upon the pro se Plaintiff's contention that he was unable to initiate a PCRA action based upon newly discovered evidence on or about December 2011 due to confiscation of his personal legal materials including evidentiary documents supporting said PCRA claim, Williams has adequately alleged actual injury as required under Lewis.[4]  This request for entry of summary judgment will be denied.

**Conspiracy**

Plaintiff generally contends that the Defendants "conspired to try and discourage/chill him from filing administrative

---

4.  The Complaint specifically describes a declaration from an inmate named Tayshawn Love and hearing transcripts as being the confiscated evidentiary materials.  See Doc. 1, ¶ 130.  Williams' opposing brief describes the declaration as being exculpatory evidence showing that he did not commit a rape, the conviction for which apparently led to his ongoing confinement.  See Doc. 90, p. 26.

complaints." Doc. 1, ¶ 59.  He indicates that all of the twenty-five (25) named Defendants assisted in the conspiracy and tried to coerce him into withdrawing his civil suit.  See id. at ¶ 60.  It is noted that the previously filed motion to dismiss did not address the claim of conspiracy.  As a result, it was allowed to proceed.

Remaining Defendants' motion for summary judgment maintain that no rational trier of fact could find that a conspiracy existed.  See Doc. 78, p. 9.  They add that the conclusory allegations of a broad conspiracy which are unsupported by any facts are insufficient.

In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations.  D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992), cert. denied, 506 U.S. 1079 (1993); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989); Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989).  The Third Circuit Court of Appeals has further noted that "[a] conspiracy claim must . . . contain supportive factual allegations." Rose, 871 F.2d at 366.  Moreover, "[t]o plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir. 1989).

The essence of a conspiracy is an agreement or concerted action between individuals.  See D.R. by L.R., 972 F.2d at 1377;

10

Durre, 869 F.2d at 545.   Consequently, a plaintiff must allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right.   Id.; Rose, 871 F.2d at 366; Young, 926 F.2d at 1405 n.16; Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 539 (E.D. Pa. 1982).   Where a civil rights conspiracy is alleged, there must be some specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity.   Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation.   Young v. Kann, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991).

There are no averments of fact set forth in the Complaint that reasonably suggest the presence of an agreement or concerted activity between the Defendants.   Williams has not alleged any facts showing any communication or cooperation among any Defendants from which an agreement could be inferred.   While this Court agrees that Plaintiff has set forth multiple claims of constitutional misconduct by various prison staff members, his Complaint has not adequately alleged that those actions were the result of a conspiracy.   The request for entry of summary judgment will be granted with respect to the claim of conspiracy.

**Administrative Exhaustion**

Remaining Defendants next assert that Williams' claims of retaliation should be dismissed because he failed to properly

exhaust his administrative remedies.  <u>See</u> Doc. 78, p. 10.
Specifically, they acknowledge that Williams filed grievances
regarding the dead mouse, wash cloth, and assault by another
prisoner related incidents.  However, although those grievances
sought a wide array of relief, there was no demand for monetary
damages of any type.  Consequently, Remaining Defendants conclude
that Plaintiff's current demands for monetary relief are precluded
since they were not included in his administrative grievances.  <u>See</u>
<u>id</u>. at p. 15.

> Section 1997e(a) of title 42 U.S.C. provides:
>
>> No action shall be brought with respect to
>> prison conditions under Section 1979 of
>> the Revised Statutes of the United States
>> (42 U.S.C. 1983), or any other federal
>> law, by a prisoner confined in any jail,
>> prison, or other correctional facility
>> until such administrative remedies as are
>> available are exhausted.

Section 1997e(a) requires administrative exhaustion
"irrespective of the forms of relief sought and offered through
administrative avenues."  <u>Porter v. Nussle</u>, 122 S.Ct. 983, 992
(2002); <u>Booth v. Churner</u>, 532 U.S. 731, 741 n. 6 (2001).  Claims
for monetary relief are not excused from the exhaustion
requirement.  <u>Nyhuis v. Reno</u>, 204 F.3d 65, 74 (3d Cir. 2000).
Dismissal of an inmate's claim is appropriate when a prisoner has
failed to exhaust his available administrative remedies before
bringing a civil rights action.  <u>Ahmed v. Sromovski</u>, 103 F. Supp.
2d 838, 843 (E.D. Pa. 2000).  "[E]xhaustion must occur prior to
filing suit, not while the suit is pending."  <u>Tribe v. Harvey</u>, 248

F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)); Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

The United States Supreme Court in Jones v. Bock, 127 S.Ct. 910, 923 (2007), stated that the primary purpose of the exhaustion requirement is to allow "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Id. The administrative exhaustion mandate also implies a procedural default component. Spruill v. Gillis 372 F.3d 218, 222 (3d Cir. 2004).

As explained by the Third Circuit Court of Appeals, a procedural default rule "prevents an end-run around the exhaustion requirement." Id. at 230. It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest." Id. Similarly, the Supreme Court has observed that proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations. Woodford v. Ngo, 548 U.S. 81 (2006).

The Court of Appeals for the Third Circuit has recognized that "[t]here is no futility exception" to the exhaustion requirement. Brown v. Croak, 312 F.3d 109, 112 (3d cir. 2002) (citing Nyhuis, 204 F.3d at 75. A subsequent decision by the Third

13

Circuit Court of Appeals reiterated its no futility exception by rejecting an inmate's argument that exhaustion should be excused because prisoner grievances were regularly rejected.  Hill v. Smith, 186 Fed. Appx. 271, 274 (3d Cir. 2006).  The Court of Appeals has also rejected "sensitive' subject matter or 'fear of retaliation' as a basis for excusing a prisoner's failure to exhaust."  Pena-Ruiz v. Solorzano, 281 Fed. Appx. 110, 113 (3d Cir. 2008).

An inmate is not required to specifically plead or demonstrate exhaustion in his or her complaint.  See Jones v. Bock, 549 U.S. 199, 216 (2007);  see also Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002)(a prisoner does not have to allege in his complaint that he has exhausted administrative remedies).  Rather, pursuant to the standards announced in Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997), it is the burden of a defendant asserting the defense of non-exhaustion to plead and prove it.[5]

A Consolidated Inmate Grievance Review System has been established by the Pennsylvania Department of Corrections ("DOC").[6] Section V of DC-ADM 804 (effective December 8, 2010) states that "every individual committed to its custody shall have access to a formal procedure through which to seek the resolution of problems or other issues of concern arising during the course of

---

5.   In Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit similarly stated that "[f]ailure to exhaust administrative remedies is an affirmative defense for the defendant to plead."

6.   The DOC's grievance system has been periodically amended.

confinement." <u>See</u> Doc. 29, p. 8.  It adds that the formal procedure shall be known as the Inmate Grievance System and provides a forum of review and two (2) avenues of appeal.  Section VI ("Procedures") of DC-ADM 804 provides that, after attempted informal resolution of the problem, a written grievance may be submitted to the Facility Grievance Coordinator within fifteen (15) working days after the events upon which the claims are based, but allowances of extensions of time will be granted under certain circumstances.

An appeal from the Grievance Coordinator's Initial Review decision may be made in writing within ten (10) working days to the Facility Manager or Superintendent.  A final written appeal may be presented within fifteen (15) working days to the Secretary's Office of Inmate Grievances and Appeals (SOIGA).  A prisoner, in seeking review through the DOC grievance system, may include reasonable requests for compensation or other legal relief normally available from a court.  However, an improperly submitted grievance will not be reviewed..

Remaining Defendants note that pursuant to an amendment issued on September 13, 2011 the DOC's administrative review system now states that a prisoner's grievance "if he or she so desired, **state a request for compensation or other relief normally available from a court**."  Doc. 78, pp. 13-14 (emphasis in original).  Thus, they conclude, relying on <u>Lock v. Nash</u>, 150 Fed. Appx. 157, 159 (3d Cir. Oct. 6, 2005), that there was not proper exhaustion of Plaintiff's pending requests for monetary damages.

15

With respect to Remaining Defendants' pending argument, it is noted that the dead mouse incident transpired on June 5, 2011, prior to the effective date of the amendment.  Remaining Defendants also acknowledge that Plaintiff's grievance regarding that event was initiated prior to the September 13, 2011, the issuing date of the amendment.

Second, an unreported decision by the Third Circuit Court of Appeals, previously suggested that an inmate may not pursue a claim for monetary relief when such a claim was not pursued administratively.  See Geisler v. Hoffman, Civil No. 99-1971, slip op. at 4 (3d Cir. Sept. 12, 2000).  However, in Spruill as well as a subsequent decision, citing Spruill, the Court of Appeals recognized that "a failure to request monetary damages in the grievance process could not be a basis for dismissal of a damages claim for failure to exhaust."  Chimenti v. Kimber, 133 Fed. Appx. 833, 836 (3d Cir. June 8, 2005).

Moreover, in its 2007 Jones holding, the United States Supreme Court additionally indicated that the primary purpose of the exhaustion requirement is to allow "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record."  Jones, 549 U.S. at 219.

Clearly, since the Lock decision was handed down in 2005 it did not address a 2011 amendment to the DOC regulations.  A review

of Lock also shows that unlike Chimenti, it did not regard the
issue of a failure to request monetary relief in a prisoner
grievance.  Thus, there is no basis for a determination that Lock
overruled Spruill and Chimenti.  Remaining Defendants have also not
provided any authority or otherwise addressed the question of
whether the language employed by DOC's September 13, 2011 amendment
overcomes the concerns expressed in Spruill.

As noted above, the grievance regarding the dead mouse issue
was clearly filed before the September 13, 2011 amendment was
issued and as such is not subject to dismissal under Spruill and
Chimenti.  The Remaining Defendants also admit that Plaintiff's
wash cloth related claim was the subject of a September 18, 2011
grievance.  See Doc. 78, p. 14.  This grievance was clearly
initiated a few days after enactment of the September 13, 2011
amendment.  However, a copy of the September 13, 2011 amendment
submitted by Remaining Defendants clearly states that said
amendment was not effective until September 20, 2011.  Thus, the
wash cloth related, September 18, 2011 grievance is likewise not
subject to dismissal.  See Doc. 80-4 p. 2.

Remaining Defendants have not specifically discussed the
question of whether the language of the September 13, 2011
amendment was of such mandatory nature that it satisfies the
concerns of Spruill that an inmate must clearly be put on notice
that he or she shall or must request monetary damages in a
grievance or face procedural default of such a request.  However,
this Court notes that in Spruill the Court of Appeals indicated

17

that the following language, "If the inmate desires compensation or other legal relief normally available from a court, the inmate shall request the relief with specificity in his/her initial grievance" would be sufficient to "give rise to a procedural default for failure to plead properly for relief." Spruill, 372 F. 3d at 234. A review of the DOC's present inmate grievance system policy indicates that the exact same language is now employed, presumably as a result of the September 13, 2011 amendment.

Accordingly, this Court agrees that Spruill and Chimenti do not appear to prevent dismissal of Plaintiff's November 20, 2011 grievance regarding an assault by another inmate. Remaining Defendants add that the holding in Jones is not applicable to Plaintiff's post-September 20, 2011 grievance, since unlike the scenario addressed by the Supreme Court. the DOC's established grievance system contained a requirement that monetary damages must be requested. See Doc. 78, p. 12. This Court agrees and finds that Remaining Defendants have sufficiently established entitlement to entry of summary judgment on the basis of non-exhaustion with respect to that claim's request for monetary relief.

In conclusion, under the standards announced in Jones, Spruill, and Chimenti, the failure of Williams' pre-September 20, 2011 grievances to specifically seek monetary relief does not warrant entry of dismissal for non-exhaustion. Second, the failure to request monetary damages in his post-September 20, 2011 administrative grievance constitutes a procedural default, and warrants the entry of summary judgment on the basis of non-

18

exhaustion with respect to that claim for monetary damages. Williams' allegation that an inmate with a history of assaultive behavior[7] in a recreation cage near the Plaintiff on November 4, 2011 so that the prisoner could throw human waste at Williams and other inmates to the extent that it seeks monetary relief will be dismissed without prejudice.[8]

**Dead Mouse/Wash Cloth/Recreation Cage**

As previously discussed, Plaintiff claims that he was retaliated against for his initiation of institutional grievances. Among the alleged retaliatory acts was the placement of a dead mouse in his food tray. A related claim contends that Williams was issued a retaliatory false misconduct charge as a result of the incident. A second act of retaliation allegedly occurred on September 18, 2011 when the Complaint contends that Williams was served a food tray by Defendants Wiseman and Enrich which had a dirty wash cloth in his food. See Doc. 1, ¶ 52.

Further retaliation purportedly ensued when Sergeant Greene deliberately placed an inmate with a history of assaultive behavior in a recreation cage near the Plaintiff so that the prisoner could throw human waste at Williams and other inmates. See id. at ¶ 63. On November 4, 2011, Defendants including Kepner, again placed Plaintiff in harm's way by similarly ordering him into a recreation

---

7.   The prisoner, Carmen Besciglia, is described as being HIV positive and afflicted with Hepatitis C who is known for throwing vomit, urine, and excrement on inmates. It is also alleged that Besciglia had previously attacked Plaintiff.

8.   This claim will proceed to the extent that Williams seeks non-monetary relief.

cage next to Inmate Besciglia.  When Williams tried to refuse, he
was threatened with the issuance of a misconduct charge.  When
Plaintiff reluctantly agreed to enter the recreation cage he was
purportedly attacked by Inmate Besciglia.  The initial summary
judgment argument asserts that these assertions "fail to establish
a cognizable retaliation claim."  Doc. 78, p. 4.

To establish a Section 1983 retaliation claim, a plaintiff
bears the burden of satisfying three (3) elements.  First, a
plaintiff must prove that he was engaged in a constitutionally
protected activity.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir.
2001).  Second, a prisoner must demonstrate that he "suffered some
'adverse action' at the hands of prison officials."  (Id.)(quoting
Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).  This
requirement is satisfied by showing adverse action "sufficient 'to
deter a person of ordinary firmness' from exercising his First
Amendment rights."  (Id.)(quoting Suppon v. Dadonna, 203 F.3d 228,
235 (3d Cir. 2000)).  Third, a prisoner must prove that "his
constitutionally protected conduct was 'a substantial or motivating
factor' in the decision to discipline him."  Rauser, 241 F.3d at
333-34(quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274,
287 (1977)).  The mere fact that an adverse action occurs after
either a complaint or grievance is filed is relevant, but not
dispositive, for the purpose of establishing a causal link between
the two events.  See Lape v. Pennsylvania, 157 Fed. App'x. 491, 498
(3d Cir. 2005).  Only where the facts of a particular case are
"unusually suggestive" of a retaliatory motive will temporal

proximity, standing alone, support an inference of causation. Krouse v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

Once Plaintiff has made a prima facie case, the burden shifts to Defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Carter v. McGrady, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted).  When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. Rauser, 241 F.3d at 334.

As noted in Allah, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied.  Thus, the relevant inquiry is not whether the alleged retaliatory conduct was unconstitutional.  On the contrary, Plaintiff only needs to establish that he was subjected to adverse action in retaliation for his engagement in constitutionally protected conduct.

Remaining Defendants do not contest that Plaintiff was engaged in constitutionally protected activity by filing grievances and lawsuits.[9]  See Doc. 78, p. 5.  Accordingly, the first prong of Rauser, i.e., that the plaintiff be engaged in a constitutionally

---

9.  The filing of a lawsuit is protected activity under the First Amendment right of prisoners to petition the court.  Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997); Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981).

protected activity will be deemed satisfied for the purposes of this discussion.  However, they contend that "contemporaneous investigatory documentation created at the time" implicated the Plaintiff himself in the planting of both the dead mouse and the wash cloth as well as establish that there was no retaliatory motive with respect to the assault by Inmate Besciglia.  Id.  The investigatory records indicated that Williams bragged about placing the dead mouse and wash cloth on his food trays in order to manufacture grounds for the initiation of a federal lawsuit. Accordingly, Remaining Defendants conclude that the second prong of Rauser has not been satisfied.[10]

It is undisputed that on occasion a dead mouse appeared on Plaintiff's food tray and that on a second date a wash cloth was on the prisoner's food tray.  There are also no facts contradicting Williams' assertion that he was placed in a disciplinary custody cell where he suffered loss of television, radio, and telephone privileges.  See Doc. 79, p. 8.  Likewise, there is no dispute as to whether Williams was assaulted by Besciglia.

In opposition to the summary judgment request, Plaintiff has submitted an affidavit from Inmate Michael Price who states that prison officials asked him to falsely tell investigators that

10.  This Court's March 8, 2013 Memorandum and Order determined that with respect to the second prong of Rauser, the alleged issuance of fabricated misconduct charges, mail interference, being served tampered food and deliberately being placed at risk of assault by another inmate were adverse actions sufficient enough to deter a prisoner of ordinary firmness from exercising his constitutionally protected conduct.

Plaintiff has planted the wash cloth.  See Doc. 94-3, Exhibit 34.

In exchange, Price would be given extra food.  Also submitted is a

declaration by Inmate Besciglia who states that he was promised

preferential treatment if he harassed litigant prisoners.  With

respect to the incident involving Besciglia, Plaintiff has also

submitted supporting declarations under penalty of perjury by

Inmates Michael Walmer, Fredrick Collins, Lawrence Wilson,[11] Eric

X. Lambert, and Michael King.  See Doc. 94-3.

On the other hand, Remaining Defendants have submitted

copies of documents pertaining to investigations conducted into the

dead mouse and wash cloth incidents.  See Doc. 80-1.  Based upon

interviews with the relevant correctional staff members and review

of videotape evidence those investigations which were conducted by

non-defendants concluded that Plaintiff had fabricated both

incidents.  The investigations also determined that Plaintiff was

not purposefully placed in a recreation cage next to Besciglia.

However, the relevant videotape evidence referenced in the

investigation reports has not been submitted to the Court.[12]

Second, the Remaining Defendants implicated in the alleged acts of

misconduct underlying those incidents have not submitted

declarations under penalty of perjury.  Nonetheless, this Court

---

11.  Wilson has also submitted a second declaration under penalty
of perjury stating that prison staff similarly retaliated against
him by placing mouse in his food.  See id., Exhibit P

12.  Remaining Defendants have acknowledge the existence of
videotape evidence.  See Doc. 72, p. 3.

agrees that the submitted investigatory documents contravene Plaintiff's version of the relevant facts.

However, as previously noted, Plaintiff must be afforded liberal treatment as a pro se litigant. Second, in considering a summary judgment motion, the entire record must be examined in the light most favorable to the non-moving party.  Based upon that criteria, this is simply not a case where the moving party has satisfied its burden of identifying evidence which demonstrates an absence of a genuine issue of material fac.  See Childers v. Joseph, 842 F. 2d 689, 694 (3d cir. 1988).  Since there are clearly disputes over material facts that might affect the outcome of this action, entry of summary judgment with respect to the retaliation claims is unwarranted.

Plaintiff's retaliation claims, including the allegations of food tampering, mail interference, destruction of personal legal property, fabricated misconduct charges, and placement of Williams in situations so that he could be attack by an inmate with a history of assaultive behavior (to the extent it does not seek monetary relief) will proceed. An appropriate order will enter.

S/Richard P. Conaboy_____
RICHARD P. CONABOY
United States District Judge


DATED: MARCH 31 , 2014