IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


LA-QUN RASHEED WILLIAMS,          :
                                  :
          Plaintiff               :
                                  :
      v.                          :    CIVIL NO. 3:CV-12-529
                                  :
DAVID A VARANO, ET AL.,           :    (Judge Conaboy)
                                  :
          Defendants              :

_____

**MEMORANDUM**
**Background**

      La-qun Rasheed Williams, an inmate presently confined at the
Greene State Correctional Institution, Waynesburg, Pennsylvania
(SCI-Greene) filed this <u>pro</u> <u>se</u> civil rights action. Plaintiff's
proposed supplemental allegations were accepted by Order dated
February 5, 2013.

      By Memorandum and Order dated March 8, 2013, Plaintiff's
second motion to amend his Complaint was granted and Correctional
Officer Yoder was substituted for Defendant John Doe 1. <u>See</u> Doc.
35. In addition, the Memorandum and Order entered <u>sua</u> <u>sponte</u>
dismissal in favor of Defendant SCI-Coal Twp and granted in part
Defendants' motion seeking partial dismissal of the Complaint. <u>See</u>
<u>id</u>. Dismissal was granted with respect to Williams' damage claims
brought against Defendants in their official capacities and in
favor of Defendants Attorney Debra Rand, Grievance Coordinators
Kandis Dascandi, Trisha Kelley, and Dorina Varner. In addition,

1

dismissal was granted in favor of Defendants Klembara, Jellen, Tripp, Symons, and Behney on the basis of failure to allege personal involvement solely with respect to the allegations raised in the Original Complaint. The Memorandum and Order of March 8, 2013 also dismissed Plaintiff's procedural due process claims relating to disciplinary proceedings which did not result in a loss of good conduct time or otherwise extend the duration of his confinement.

However, Williams' retaliation claims regarding denials of due process during misconduct proceedings which did not result in a loss of good conduct time were allowed to proceed.  Finally, Plaintiff's allegations of denials of due process during misconduct proceedings which resulted in a loss of good conduct time were also dismissed without prejudice to any right the inmate had to challenge those proceedings via a federal habeas corpus petition.[1]

A March 31, 2014 Memorandum and Order construed Remaining Defendants' motion for summary judgment as seeking entry of partial summary judgement and partially granted their request. See Doc. 112.  Specifically, summary judgment was granted with respect to Williams' claims of conspiracy and his unexhausted claim for monetary damages regarding his allegation that an inmate with a history of assaultive behavior was placed in a recreation cage near the Plaintiff on November 4, 2011.  However, the motion for partial

---

1.  Since they were not addressed by the motion to dismiss, Plaintiff's claim of conspiracy as well as his supplemental allegations against the Defendants were also permitted to proceed.

2

summary judgment was denied with respect to Plaintiff's supplemental allegations (Doc. 15); his access to the courts claim; and his retaliation claims.

## Plaintiff's Allegations

Remaining Defendants are the following officials at Plaintiff's prior place of confinement, the State Correctional Institution, Coal Township, Pennsylvania (SCI-Coal Twp.): Superintendent David Varano; Deputy Superintendent Ronda Ellett; Majors George Miller, Michael Miller; Captain Charles Stetler; Unit Manager Tripp; Lieutenants J.B. Burns and Symons; Sergeants Green, Claudfelter, and Batiuk; Hearing Examiner Kerns-Barr; Correctional Officers A.A. Kitchen, Klembara, Kepner, Wiseman, Allen, Yoder, and Emrich; Tammy Behney, and two (2) John Does.  Also named as a Defendant is Mail Inspector Therese Jellen of the Pennsylvania Department of Corrections (DOC).

According to the Complaint, on June 5, 2011, while Plaintiff was assigned to the SCI-Coal Twp. Restricted Housing Unit (RHU), Defendants Emerich and Kitchen retaliated against him over his prior filing of a federal lawsuit and institutional grievances by serving him a meal tray which contained a dead mouse.  See Doc. 1, ¶ 27.  In a related claim, Williams indicates that he was issued a falsified misconduct on August 10, 2011 which alleged that he had fabricated his claim of being served a dead mouse.  Williams further claims that he was denied due process during the ensuing disciplinary proceedings.

3

Plaintiff's second retaliation claim contends that on August 13, 2011 he was transferred to a disciplinary custody cell "so that his television, radio, and phone calls could be taken." Doc. 1, ¶ 40. Williams indicates that he was told in November 2011 that those items would be returned to him if he withdraw his pending federal law suit. See Doc. 15, ¶ 167. A third instance of retaliation occurred on September 18, 2011 when Williams was purportedly served a food tray by Defendants Wiseman and Enrich which had a dirty wash cloth in his food. See id. at ¶ 52.

The next contention of retaliation alleges that Sergeant Greene deliberately placed an inmate with a history of assaultive behavior[2] in a recreation cage near the Plaintiff so that the prisoner could throw human waste at Williams. See id. at ¶ 63. On November 4, 2011, Defendants including Kepner engaged in retaliation by putting Plaintiff in harm's way by similarly ordering him into a recreation cage next to Inmate Besciglia. When Williams tried to refuse, he was threatened with the issuance of a misconduct charge. After Plaintiff reluctantly agreed to enter the recreation cage he was purportedly attacked for a third time by Inmate Besciglia. After Williams filed a grievance, Defendant Kepner purportedly responded by issuing him a fabricated disciplinary charge. The Complaint again asserts that Plaintiff's

---

2. The prisoner, Carmen Besciglia, is described as being HIV positive and afflicted with Hepatitis C who is known for throwing vomit, urine, and excrement on inmates. It is also alleged that Besciglia had previously attacked Plaintiff.

due process rights were violated during the ensuing misconduct proceedings.

The Complaint maintains that CO Kitchen engaged in further retaliation by confiscating and intentionally destroying Plaintiff's personal legal materials and that there was interference and destruction with the inmate's outgoing legal mail. Plaintiff further indicates he was subjected to verbal threats by Defendant Klembara, issuance of a retaliatory falsified disciplinary charge, and confiscation of personal property during February 2012.  See Doc. 15, ¶¶ 168-75.  During that same time period, Defendant Behney allegedly discarded some of Williams' personal legal property and Plaintiff was subjected to a retaliatory hard cell placement.  While in the hard cell, Plaintiff allegedly received a food tray with a razor blade in his food.  See id. at ¶ 183.

Presently pending is Remaining Defendants' second motion for summary judgment.  See Doc. 144.  The opposed motion is ripe for consideration.

## **Discussion**

Remaining Defendants claim entitlement to entry of summary judgment on the grounds that: (1) the access to the court claim cannot proceed because Plaintiff has failed to prove an actual injury; (2) the claims of retaliatory fabricated misconduct charges lack merit since Williams was convicted of those charges; (3) the due process claim against Hearing Examiner Kerns-Barr lacks merit; (4) the confiscation of Plaintiff's personal property and

disciplinary confinement were consistent with the results of his misconduct proceedings; (5) no reasonable jury could find in Plaintiff's favor on the food tampering claims against Kitchen, Emerich, Wiseman, and Kepner; (6) the verbal harassment claims against Defendants Klembara, Symons, and Batnick do not rise to the level of a constitutional violation; (7) Defendants Greene and Klepner are entitled to summary judgment regarding the contentions that they deliberately placed Williams at risk of assault by another prisoner; (8) there are no assertions of personal involvement by Varano, Ellett, G. Miller, M. Miller, Stetler, Tripp, Burns, Dascani. Kelley, Allen, Varner, and Yoder in any constitutional misconduct; (9) the claims that the DOC failed to follow some of its own policies are inadequate; and (10) Plaintiff failed to exhaust his administrative remedies with respect to his the allegations of property destruction and interference with mail by Jellen and Behney.

**Standard of Review**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that

6

would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

7

## Access to the Courts

Plaintiff maintains that CO Kitchen confiscated and intentionally destroyed his personal legal materials (two legal boxes and seven law books).  Doc. 1, ¶ 102.  Williams adds that the confiscated material included an anticipated PCRA petition dealing with newly discovered evidence.[3]  See id. at ¶ 112.  The Complaint also contends and that there was interference and destruction with respect to his outgoing legal mail.  See id. at ¶ 148.

Prisoners enjoy a constitutional right of meaningful access to the law libraries, legal materials, or legal services.  Bounds v. Smith, 430 U.S. 817, 821-25 (1977).  Inmates have a right to send and receive legal mail which is uncontroverted and implicates both First and Sixth Amendment concerns, through the right to petition the government and the right of access to the courts. "When legal mail is read by prison employees, the risk is of a 'chill,' rendering the prisoner unwilling or unable to raise substantial legal issues critical of the prison or prison employees."  Proudfoot v. Williams, 803 F. Supp. 1048, 1052 (E.D. Pa. 1992).

The United States Supreme Court in Lewis v. Casey, 518 U.S. 343, 351-54 (1996), clarified that an inmate plaintiff, in order to set forth a viable claim under Bounds, must demonstrate that a non-

_____

3.  Pennsylvania's Post Conviction Relief Act (PCRA), "permits motions for post-conviction collateral relief for allegations of error, including ineffective assistance of counsel, unlawfully induced guilty pleas, improper obstruction of rights to appeal by Commonwealth officials, and violation of constitutional provisions."  Hankins v. Fulcomer, 941 F.2d 246, 251 (3d Cir. 1991).

frivolous legal claim had been frustrated or was being impeded.  A plaintiff must also allege an actual injury to his litigation efforts.  Under the standards mandated by <u>Lewis</u>, in order for an inmate to state a claim for interference with his legal work, he must demonstrate that he has suffered actual injury.  <u>See</u> <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d Cir. 1997)(concluding that <u>Lewis</u> effectively requires a showing of actual injury where interference with legal mail is alleged).

The Complaint asserts that as a result of the alleged interference he was unable to timely file a PCRA action in apparent satisfaction of the <u>Lewis</u> actual injury requirement.  <u>See</u> Doc. 1, ¶ ¶ 112, 113.  Remaining Defendants argue that the <u>Lewis</u> requirement has not been met.  They note that Plaintiff was convicted of multiple charges in 1997 and thereafter sentenced to an aggregate 35-85 term of imprisonment.  Second, Williams filed a counseled PCRA action which was denied almost 4 years before the alleged interference by Defendant Kitchen.

It is also noted that Petitioner filed another PCRA action on January 16, 2014 which was summarily dismissed.  Moreover, Plaintiff has filed motions in state court requesting that the Commonwealth preserve exculpatory evidence, filings which clearly undermine his contention that he was in possession of exculpatory evidence.  The undisputed record shows the following: Plaintiff has pursued multiple unsuccessful challenges to his state criminal conviction; he has not provided the Court with sufficient evidence describing the alleged exculpatory evidence in his possession; and

9

he has not established how he would safisfy the PCRA's timeliness
requirement.  Therefore, the <u>Lewis</u> requirement of alleging actual
injury to a non-frivolous legal claim has not been satisfied, and .
summary judgment will be granted with respect to the denial of
access to the courts claim.

**<u>Verbal Harassment</u>**

During February, 2012, Plaintiff contends that he was
subjected to verbal threats by Defendant Klembara.  <u>See</u> Doc. 15, ¶¶
172-175.  There are also allegations that Defendants Batiuck and
Symons verbally threatened Plaintiff.  <u>See</u> <u>id</u>. at ¶¶ 172, 182.

The use of words generally cannot constitute an assault
actionable under § 1983.  <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 n.7
(2d Cir.); <u>Maclean v. Secor</u>, 876 F. Supp. 695, 698-99 (E.D. Pa.
1995); <u>Murray v. Woodburn</u>, 809 F. Supp. 383, 384 (E.D. Pa. 1993)
("Mean harassment . . . is insufficient to state a constitutional
deprivation."); <u>Prisoners' Legal Ass'n v. Roberson</u>, 822 F. Supp.
185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to
a constitutional violation enforceable under § 1983.").

Mere threatening language and gestures of a custodial
officer do not, even if true, amount to constitutional violations.
 <u>Balliet v. Whitmire</u>, 626 F. Supp. 219, 228-29 (M.D. Pa.)
("[v]erbal abuse is not a civil rights violation . . ."), <u>aff'd</u>,
800 F.2d 1130 (3d Cir. 1986) (Mem.).  A constitutional claim based
only on verbal threats will fail regardless of whether it is
asserted under the Eighth Amendment's cruel and unusual punishment

clause, see Prisoners' Legal Ass'n, 822 F. Supp. at 189, or under the Fifth Amendment's substantive due process clause.

However, verbal harassment with some accompanying reinforcing act may state a constitutional claim.  For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words.  See Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife).  Moreover, alleged instances of verbal harassment which are not accompanied by any physical contact are constitutionally insufficient.  See Hart v. Whalen, 2008 WL 4107651 *10 (M.D. Pa. July 29, 2008);  Wright v. O'Hara, 2004 WL 1793018 *7  (E.D. Pa. 2004)(correctional officer's words and gestures, including lunging at prisoner with a clenched fist, were constitutionally insufficient because there was no physical contact).

There is no indication that any of the verbal threats allegedly voiced against Williams were accompanied by a reinforcing act involving a deadly weapon as contemplated under Northington and Douglas.  More importantly, it is not asserted that the alleged verbal abuse was accompanied by any physically intrusive behavior. Given the circumstances described by Plaintiff, the purported verbal remarks attributed to Defendants Klembara, Symons, and Batiuck were not of such magnitude to shock the conscience as contemplated by this Court in  S.M. v. Lakeland School District,

11

148 F. Supp.2d 542, 547-48 (M.D. Pa.  2001), and thus, did not rise to the level of a constitutional violation.   Since there are no additional discernible claims raised against those officials, summary judgment will be granted in favor of Defendants Klembara, Symons, and Batiuck.

**Failure to Follow DOC Regulations**

The third summary judgment argument presented is that the alleged failure of Remaining Defendants to follow prison regulations is not a basis by itself for a constitutional violation.  See Doc. 146, p. 44

This Court agrees that a violation of DOC regulations does not automatically equate to a violation of the Constitution.  See Rashid v. Yates, 2005 WL 1277825 *3  (M.D. Pa. May 26, 2005); Thibodeau v. Watts, 2006 WL 89213 *4 (M.D. Pa. Jan. 11, 2006).  As such, entry of summary judgment is appropriate with respect to any claim solely premised on a violation of DOC regulations.

**Personal Involvement**

Remaining Defendants' next argument maintains that Remaining Defendants Superintendent Varano, Deputy Superintendent Ellett; Major George Miller, Captain Stetler, Major Michael Miller, Unit Manager Tripp, Grievance Coordinators Dascani, Varner and Kelley; Lieutenant Burns, Correctional Officers Allen and Yoder are entitled to entry of summary judgment because Plaintiff has failed to allege that those officials had personal involvement in any acts of constitutional misconduct.  See Doc. 146, p. 36.

A plaintiff, in order to state an actionable § 1983 civil

12

rights claim, must plead two essential elements:  (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Inmates also do not have a constitutional right to a prison grievance system.  See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a

13

prison grievance procedure confers no liberty interest on a prisoner.") Consequently, any attempt by Plaintiff to establish liability against the Warden solely based upon the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim.  See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

As previously discussed in this Court's Memorandum and Order of March 8, 2013, any attempt by Plaintiff to establish liability solely based upon supervisory capacities or the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim.

Based upon a review of the Plaintiff's surviving claims, any claims asserted against Superintendent Varano; Major George Miller, Burns, Grievance Coordinators Dascani, Varner and Kelley as well as Deputy Superintendent Ellett are based either upon their respective supervisory capacities, or their failure to respond to Plaintiff's administrative grievances.  There are also no viable contentions that the actions taken by those officials were the result of a retaliatory motive.  Defendants Varano, Ellett, George Miller, Dascani, Varner, and Kelley's request for summary judgment will be granted.

14

There are no discernible allegations among Plaintiff's surviving original and supplemental claims which allege any involvement by Unit Manager Tripp and CO Allen.  Accordingly, under the well settled <u>Rode</u> principles, those two defendants are likewise entitled to entry of summary judgment.  Likewise the following allegations simply do not adequately allege employee participation in any conduct which violated Plaintiff's constitutional rights: (1) Yoder delivered Plaintiff a PRC slip and returned some items of the inmate's personal property to him; (2) Williams spoke to Defendant Michael Miller regarding being put in a recreation cage next to Inmate Besciglia;[4] (3) Lieutenant Burns conducted an inadequate investigation into one of Plaintiff's grievances.  As such, Defendants Yoder, Michael Miller, and Burns are likewise entitled to entry of summary judgment.

**Administrative Exhaustion**

The fifth argument raised by Remaining Defendants is that the claims that Defendants Jellen and Behney interfered with Plaintiff's outgoing and incoming mail and were responsible for the destruction of some of his personal property should not be entertained because Williams failed to exhaust his available administrative remedies.[5]  <u>See</u> Doc. 146, p. 45.  Remaining

---

4.  This Court previously concluded that the recreation cage claims involving Inmate Besceglia should not proceed.

5.  To the extent that Plaintiff is seeking relief against Jellen for the same conduct alleged in an earlier action which he initiated before this Court, <u>Williams</u>, Civil No. 3:10-10-CV-979, this Court agrees that any such redundant claims are subject to dismissal.

Defendants further contend that the allegation that Defendant Kepner served Plaintiff a meal tray with a razor blade in his food (Doc. 15, ¶ 183) is also unexhausted.  See Doc. 146, p. 28.

Section 1997e(a) of title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." Porter v. Nussle, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001).  Claims for monetary relief are not excused from the exhaustion requirement.  Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action.  Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000).  "[E]xhaustion must occur prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)); Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

An inmate is not required to specifically plead or demonstrate exhaustion in his or her complaint.  See Jones v. Bock, 549 U.S. 199, 216 (2007);  see also Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002)(a prisoner does not have to allege in his complaint that

he has exhausted administrative remedies).  Rather, pursuant to the standards announced in <u>Williams v. Runyon</u>, 130 F.3d  568, 573 (3d Cir. 1997), it is the burden of a defendant asserting the defense of non-exhaustion to plead and prove it.[6]  The United States Supreme Court in <u>Jones</u> noted that the primary purpose of the exhaustion requirement is to allow prison officials to address complaints before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record.

The administrative exhaustion mandate also implies a procedural default component.  <u>Spruill v. Gillis</u> 372 F.3d 218, 222 (3d Cir. 2004).  As explained by the Third Circuit Court of Appeals, a procedural default rule "prevents an end-run around the exhaustion requirement."  <u>Id</u>. at 230.  It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest."  <u>Id</u>.  Similarly, the Supreme Court has observed that proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations.  <u>Woodford v. Ngo</u>, 548 U.S. 81 (2006).

---

6.    In <u>Mitchell v. Horn</u>, 318 F.3d 523, 529 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit similarly stated that "[f]ailure to exhaust administrative remedies is an affirmative defense for the defendant to plead."

A Consolidated Inmate Grievance Review System has been established by the Pennsylvania Department of Corrections ("DOC").[7] Section V of DC-ADM 804 (effective December 8, 2010) states that "every individual committed to its custody shall have access to a formal procedure through which to seek the resolution of problems or other issues of concern arising during the course of confinement." See Doc. 29, p. 8.  It adds that the formal procedure shall be known as the Inmate Grievance System and provides a forum of review and two (2) avenues of appeal.  Section VI ("Procedures") of DC-ADM 804 provides that, after attempted informal resolution of the problem, a written grievance may be submitted to the Facility Grievance Coordinator within fifteen (15) working days after the events upon which the claims are based, but allowances of extensions of time will be granted under certain circumstances.

An appeal from the Grievance Coordinator's Initial Review decision may be made in writing within ten (10) working days to the Facility Manager or Superintendent.  A final written appeal may be presented within fifteen (15) working days to the Secretary's Office of Inmate Grievances and Appeals (SOIGA).  A prisoner, in seeking review through the DOC grievance system, may include reasonable requests for compensation or other legal relief normally available from a court.  However, an improperly submitted grievance will not be reviewed.

---

7.    The DOC's grievance system has been periodically amended.

In support of their non-exhaustion argument, Remaining Defendants have submitted a declaration under penalty of perjury by SOIGA Grievance Review Officer Tracy Williams. <u>See</u> Doc. 147-22. Williams states that based upon a review of the DOC's automated inmate grievance tracking system during the relevant time period Plaintiff never filed a final administrative appeal regarding his claims of property destruction or mail interference by Behney and Jellen or the razor blade related claim against Kepner. <u>See</u> <u>id</u>. at ¶ 14.

A review of the undisputed record, especially the declarations submitted under penalty of perjury by non-defendant Tracy Williams, shows that the Remaining Defendants have satisfied their burden under <u>Williams</u> of establishing that Jackson's allegations against Defendants Jellen, Kepner, and Behney were not administratively exhausted and that there is no basis for a determination that exhaustion should be excused. Accordingly, summary judgment will be granted in favor of those officials on the basis of non-exhaustion in regards to those claims.

**Due Process**

Plaintiff alleges that his constitutional right of due process was violated during three (3) disciplinary proceedings conducted by Hearing Examiner Kerns-Barr.

Remaining Defendants argue that the sanctions imposed as a result of those proceedings did not constitute an atypical and significant hardship. <u>See</u> Doc. 146, p. 21. Moreover, they contend

19

that three disciplinary hearings were conducted in accordance with all required procedural requirements.

This Court's March 8, 2013 Memorandum and Order previously dismissed without prejudice any claims of denials of due process during misconduct proceedings which resulted in a loss of good conduct time.  The Plaintiff was advised that he could pursue any such claims in a federal habeas corpus action.

It was also determined that Williams' procedural due process claims relating to disciplinary proceedings which did not result in a loss of good conduct time or otherwise extend the duration of his confinement also could not proceed since there was no atypical or significant hardship imposed on Williams as required under Sandin. However, Williams's claims of retaliatory mistreatment during his misconduct proceedings were permitted to proceed.

With respect to the surviving retaliatory due process claims against Hearing Examiner Kerns-Barr, due process is satisfied when an inmate is afforded to be heard and to defend against an allegedly falsified or baseless misconduct charge.  See Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002).  The United States Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 563-73 (1974), held that a prisoner deprived of good time credits as a sanction for misconduct is entitled to certain due process protections in a prison disciplinary proceeding.  Wolff noted that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply."  Id. at 556.

20

Nonetheless, the Supreme Court held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed.  Id. at 563-71.  The Supreme Court set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action.  Id.  An additional procedural requirement was set forth in Hill--the Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal.

Based upon a review of the submitted record pertaining to the challenged disciplinary proceedings (Docs. 147-5, 147-6, & 147-7), Plaintiff has failed to establish that any of the actions, primarily the decision by Hearing Examiner Kerns-Barr not to allow Plaintiff to call certain witnesses, was the result of a retaliatory motive.  It is especially noted that the Hearing Examiner reviewed videotape evidence as requested by the Plaintiff in all three cases.

This decision is bolstered by a review of Plaintiff's administrative appeals from the adverse misconduct decisions which

21

do not set forth any discernible allegations of retaliatory misconduct by the Hearing Examiner.  Summary judgement will be granted in favor of Defendant Kerns-Barr.

**Food Tampering/Misconduct Charges**

Plaintiff alleges that he was issued fabricated disciplinary charges as retaliation.  The first misconduct was issued during the Summer of 2011 and charged him with fabricating a claim of food tampering by placing a dead mouse on his tray.  The second misconduct was related to an incident where he was placed next to an assaultive prisoner in an exercise pen.  The third and final misconduct was issued to Williams in February 2012 and regarded confiscation of his personal property.

An alleged false misconduct charge does not by itself qualify as a violation of the Eighth Amendment.  See Booth v. Pensce, 354 F. Supp.2d 553, 558-59 (E.D. Pa. 2005).

The filing of a disciplinary charge, although not otherwise actionable under § 1983, is actionable if done in retaliation for an inmate's filing of a grievance pursuant to established procedures.  Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); see also Newsom v. Norris, 888 F.2d 371, 377 (6th Cir. 1989) (filing of false disciplinary charges is not a constitutional violation unless charges were filed in retaliation for the exercise of a constitutional right).

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally

22

protected activity.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials."  (Id.)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights."  (Id.)(quoting Suppon v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  Rauser, 241 F.3d at 333-34(quoting Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  See Lape v. Pennsylvania, 157 Fed. App'x. 491, 498 (3d Cir. 2005).  Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation.  Krouse v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

Once Plaintiff has made a prima facie case, the burden shifts to Defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest."  Carter v. McGrady, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted).  When analyzing a retaliation claim, it must be recognized that the task of prison administrators

and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. Rauser, 241 F.3d at 334.

As noted in Allah, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied.  Thus, the relevant inquiry is not whether the alleged retaliatory conduct was unconstitutional.  On the contrary, Plaintiff only needs to establish that he was subjected to adverse action in retaliation for his engagement in constitutionally protected conduct.

Plaintiff asserts that the alleged retaliatory conduct was undertaken for his pursuit of legal action, including a prior federal civil rights action.  The filing of a lawsuit is protected activity under the First Amendment right of prisoners to petition the court.  Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997); Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981).  Thus, the first prong of Rauser, i.e., that the plaintiff be engaged in a constitutionally protected activity, has been satisfied.

With respect to the second prong of Rauser, this Court is equally satisfied that the alleged issuance of fabricated misconduct charges, mail interference, being served tampered food and deliberately being placed at risk of assault by another inmate[8]-- the adverse actions allegedly taken against Williams--

---

8.  The filing of a false disciplinary charge is not a constitutional violation unless the charge was filed in retaliation for the exercise of a constitutional right.  See Flanagan v. Shively, 783 F.Supp. 922, 931 (M.D. Pa.1992), aff'd., 980 F.2d 722
(continued...)

would be sufficient to deter a prisoner of ordinary firmness from exercising his constitutionally protected conduct.  Hence, there has also been adequate compliance with that <u>Rauser</u> requirement.

Plaintiff states that on June 5, 2011 while housed in the SCI-Coal Twp. Restricted Housing Unit (RHU), Defendants Emerich and Kitchen retaliated against him over his prior filing of a federal lawsuit and institutional grievances by serving him a meal tray which contained a dead mouse.  <u>See</u> Doc. 1, ¶ 27.  On August 10, 2011, Plaintiff claims that he was issued falsified misconduct which apparently alleged that he had fabricated his claim of being served a dead mouse.  Additional retaliation allegedly occurred on September 18, 2011 when Williams was served a food tray by Defendants Wiseman and Emerich which had a dirty wash cloth in his food.  <u>See</u> <u>id</u>. at ¶ 52.

It is undisputed that a dead mouse and wash cloth ended up on food trays given to the Plaintiff.  Remaining Defendants argue that the dead mouse and wash cloth were planted by the Plaintiff as part of a ruse to pursue a federal civil rights claim.  Inmate Williams alleges that correctional staff planted the mouse and wash cloth as retaliatory measures.[9]  There are clearly genuine issues

---

8.  (...continued)
(3d Cir.1992).  For example, the Third Circuit Court of Appeals has ruled that an allegation of falsifying misconduct reports in retaliation for an inmate's "resort to legal process" is a violation of the7 First Amendment guarantee of access to the courts.  <u>Smith</u>, 293 F.3d 653 (citation omitted).

9.  Plaintiff has submitted an affidavit from Inmate Michael Price who states that prison officials asked him to falsely tell
(continued...)

of material facts regarding the dead mouse and wash cloth related incidents.  For instance, Remaining Defendants acknowledge the presence of a factual dispute by acknowledging that an internal investigation determined only that it was "overwhelmingly likely" that Plaintiff planted the dead mouse.  See Doc. 146, p. 25. Likewise they contend that information from a confidential informant "suggested that it was overwhelmingly likely" that Plaintiff himself planted the wash cloth.  See id. at p. 26.

Since those contentions themselves support a determination that there are material factual issues in dispute, the request for entry of summary judgment will be denied with respect to both the food tampering and related fabricated misconduct charges.[10]

**Failure to Protect Claim**

It is asserted that Sergeant Greene deliberately placed an inmate with a history of assaultive behavior[11] in a recreation cage near the Plaintiff so that the prisoner could throw human waste at Williams and other inmates.  See id. at ¶ 63.

---

9.  (...continued)
investigators that Plaintiff had planted the wash cloth.  See Doc. 94-3, Exhibit 34. In exchange, Price would be given extra food.

A declaration under penalty of perjury by Inmate Lawrence Wilson states that prison staff similarly retaliated against him by placing mouse in his food. See Doc. 94-3, Exhibit P

10.

11.  The prisoner, Carmen Besciglia, is described as being HIV positive and afflicted with Hepatitis C who is known for throwing vomit, urine, and excrement on inmates.  It is also alleged that Besciglia had previously attacked Plaintiff.

On November 4, 2011, Defendants including Kepner allegedly tried to again place Plaintiff in harm's way by similarly ordering him into a recreation cage next to Inmate Besciglia.  When Williams tried to refuse, he was threatened with the issuance of a misconduct charge for failing to obey an order.  When Plaintiff reluctantly agreed to enter the recreation cage he was attacked for a third time by Inmate Besciglia.  After Williams filed a grievance, Defendant Kepner purportedly responded with a fabricated disciplinary charge.  The Complaint alleges that Williams was placed near an assaultive prisoner known to throw bodily fluids. All of those actions were allegedly taken in retaliation for Plaintiff's initiation of grievances and lawsuits.  See Doc. 13, p. 12.

As discussed above the first two prongs of Rauser will also be deemed satisfied for purposes of this discussion.  Plaintiff has submitted a declaration by Inmate Besciglia who states that he was promised preferential treatment if he harassed litigant prisoners. With respect to the incident involving Besciglia, Plaintiff has also submitted supporting declarations under penalty of perjury by Inmates Michael Walmer, Fredrick Collins, Lawrence Wilson, Eric X. Lambert, and Michael King.  See Doc. 94-3.

Based upon those submissions this Court is satisfied that there are material issues of fact which preclude entry of summary judgment with respect to this claim.

**Confiscation of Personal Property**

The final summary judgment argument contends that Plaintiff's claims of confiscation of personal property and

placement in disciplinary custody were not atypical and significant hardships as contemplated under <u>Sandin</u> and as such cannot proceed. <u>See</u> Doc. 146, p. 25.

Williams alleges that he was placed in a disciplinary custody cell where he suffered loss of television, radio, and telephone privileges.  <u>See</u> Doc. 79, p. 8.

The United States Supreme Court has held that a federal inmate has "no legitimate statutory or constitutional entitlement" to any particular custodial classification even if a new classification would cause that inmate to suffer a "grievous loss." <u>Moody v. Daggett</u>, 429 U.S. 78, 88 n.9 (1976); <u>James v. Reno</u>, 39 F. Supp. 2d 37, 40 (D.D.C. 1999)(citation omitted) (a federal inmate "has no liberty interest in his security classification").

Courts within this circuit, applying <u>Sandin</u> in various actions, have found no merit in procedural due process claims presented regarding institutional disciplinary hearings which result in disciplinary custody placement.  <u>See</u> <u>Torres v. Fauver</u>, 292 F.3d 141, 150-51 (3d Cir. 2002)(because prisoners can reasonably anticipate transfer to disciplinary custody, placement in segregation as a disciplinary sanction did not implicate a protected liberty interest); <u>Griffin v. Vaughn</u>, 112 F.3d 703, 706-08 (3d Cir. 1997)(no liberty interest; <u>Smith v. Mensinger</u>, 293 F.3d 641, 645, 654 (3d Cir. 2002)(seven (7) months of disciplinary confinement did not implicate liberty interest); <u>Vorhauer v. Conrad</u>, No. 3:CV-90-2196 (M.D. Pa. Jan. 29, 1997) (Vanaskie, J.) (inmate's confinement in disciplinary custody for ninety days in accordance with DOC procedures did not give rise to a protected

28

liberty interest); <u>Brown v. Stachelek</u>, No. CIV. A. 95-522, 1995 WL 435316, at *3-4 (E.D. Pa. Jul. 20, 1995) (neither the Due Process Clause nor state law supported plaintiff's procedural due process claims because his punishment (at most ninety days in "close custody" and a loss of "minimum status") was not outside the scope of his sentence and did not otherwise violate the Constitution). In <u>Young v. Beard</u>, 227 Fed. Appx. 138, 141 (3d Cir. 2007) the Court of Appeals for the Third Circuit concluded that an aggregate sanction of 930 days in disciplinary custody was within acceptable constitutional parameters.

Based upon those decisions, this Court agrees that Plaintiff's claims relating to being placed in disciplinary confinement as the result of misconduct charges is subject to dismissal under <u>Sandin</u>. Likewise, Williams' allegations of being denied access to his television, radio, and phone calls while in disciplinary confinement fail under <u>Sandin</u>. An appropriate Order will enter

<u>S/Richard P. Conaboy</u>
RICHARD P. CONABOY
United States District Judge

DATED: MARCH 31, 2015